IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | : : | CIVIL ACTION NO. MDL-875<br>Becnel 2:08-cv-84556-ER |

This Document Relates to:

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Becnel, Gayle, et al.<br><br>v.<br><br>Anco Insulations, Inc., et al. | : : : : : : | Civil Action No. 3:07-cv-315-FJP-DLD |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Northrop Grumman Ship Systems, Inc., formerly known as Avondale Industries, Inc. (n/k/a Northrop Grumman Shipbuilding Systems, Inc.) ("Avondale"), moves for summary judgment dismissing plaintiffs' claims against it and respectfully shows as follows:

### PREAMBLE

Plaintiffs are the wife and children of their decedent, Carl Becnel, Sr. They allege a cause of action against Avondale under Louisiana tort law. Under Louisiana State tort law, Avondale is not immune from this suit.[1] Under the Longshore and Harbor Workers Compensation Act ("LHWCA"), Avondale is immune.[2] Avondale therefore shows that there is a direct conflict between state law and applicable federal law, the LHWCA. As will be discussed below, the LHWCA prohibits such claims. Accordingly, Avondale is entitled to the relief of limited federal preemption and the dismissal of plaintiffs' claims against it.

---

[1] La. R.S. 22:103.1 (1952). See also, Rando v. Anco Insulation, Inc., et al., 2008-C-1163 c/w 2008-C-1169 (La. 5/22/09), attached.
[2] 33 U.S.C. § 905 (a).

## THE LHWCA

Jurisdiction under the Longshore and Harbor Workers' Compensation Act is established by the satisfaction of the "status" and "situs" tests. Injuries are compensable under the LHWCA for "employees" including:

> . . . any person engaged in maritime employment including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, ship-builder...[3]

Such a person must also be injured

> . . . upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).[4]

As demonstrated below, plaintiffs cannot dispute that their decedent, Carl Becnel, Sr., and Avondale satisfy the "status" and "situs" tests and are thus subject to the jurisdiction of the LHWCA. Avondale was (from 1965 to 2004, Carl Becnel, Sr.'s alleged employment stint at Avondale) situated adjacent to the navigable waters of the United States of America.[5] Avondale is and has always been (as its title suggests) in the business of constructing and/or repairing marine vessels.[6] Carl Becnel, Sr.'s work at Avondale involved the construction and/or repair of marine vessels.[7] Accordingly, Avondale and Carl Becnel, Sr. both qualify for adjudication under the LHWCA.

The LHWCA was enacted in 1927 to provide compensation from employers in lieu of tort damages against employers for long shore workers who perform a variety of tasks for, on, and around vessels. Under Section 904 of the LHWCA, an employer is liable for compensation

---

[3] 33 U.S.C. §902(3).
[4] 33 U.S.C. §903(a).
[5] See, Affidavit of Albert L. Bossier, Jr., attached.
[6] See, Affidavit of Albert L. Bossier, Jr., attached.
[7] See, Affidavit of Albert L. Bossier, Jr., attached.

to its employees for job-related injuries or illnesses, regardless of fault as a cause for the employee's injury or illness.[8] Unlike the immunity afforded to co-employees, which was added to the LHWCA in 1959, the immunity of *employees* from tort claims for an employee's injury or illness has been present from the inception of the LHWCA in 1927.[9] Finally, section 905 of the LHWCA has always provided that the liability of the employer is exclusive and in place of all other liability of the employer:

> The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee...except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee...may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death...[10]

The LHWCA strictly immunizes employers from tort liability to employees for occupational diseases allegedly resulting from exposure to asbestos. As discussed above, Carl Becnel, Sr. and Avondale satisfy the "status" and "situs" tests, and therefore, Avondale is immune from plaintiffs' tort suit under the LHWCA.

## LIMITED PRE-EMPTION

The interaction between competing state and federal compensation schemes was thoroughly examined by the United States Supreme Court in *Sun Ship v. Pennsylvania*.[11] Essentially, the Supreme Court explained that the LHWCA represents Congressional intent to ensure that longshore workers are compensated at the minimum level of benefits.[12] The *Sun Ship* Court stressed that concurrent jurisdiction should allow for each compensation scheme to

---

[8] 33 U.S.C §904.
[9] *Grain Handling Co. v. Sweeney*, 102 F.2d 464 (2d Cir. 1939); *McNeely v. Sheppeard*, 89 F.2d 959 (5th Cir. 1937); *Anderson v. Hoage*, 70 F.2d 773 (D.C. Cir. 1934). *See also*, 33 U.S.C. §902(2).
[10] 33 U.S.C. §905(a).
[11] 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed. 2d 458 (1980).
[12] *Id.* at 720.

supplement the other.[13] If, for example, the LHWCA scheduled benefits higher than corresponding state benefits, a worker could supplement his state-based recovery. Inversely, injuries compensated under the LHWCA could be supplemented with state benefits.

Prior to 1989,[14] long shore workers who proceeded under the Louisiana Workers Compensation Act could recover state statutory benefits, and then receive supplementary LHWCA benefits in the event of a discrepancy. Total preemption of state law by the LHWCA was not intended; however, limited preemption, for employers, such as Avondale, occurs where the state law either directly conflicts with federal law or interferes with the regulatory scheme established by Congress.[15]

## FEDERAL LAW CONTROLS

As the United States Fifth Circuit has stated in *Grantham v. Avondale Industries, Inc.*,[16] federal statutory preemption of state law is a matter of federal law, and federal courts are constitutionally bound to ***ignore*** state court decisions at odds with contrary expressions from the federal bench.[17]

In *Grantham*, a painter was injured when he fell off a platform while working in an area within the scope of the LHWCA.[18] He was employed by International Marine, an Avondale subcontractor.[19] International Marine provided Grantham his compensation benefits through its LHWCA insurer.[20] Unsatisfied with the benefits provided under the LHWCA statutory scheme,

---

[13] *Id.* at 723-724.
[14] *See*, Act 454 of 1989, codified at La. R.S. 23:1035.2 and *Dempster v. Avondale Shipyards, Inc.*, 643 So.2d 1316 (La. App. 5th Cir. 1994)(LHWCA and Louisiana Workers Compensation Act are mutually exclusive).
[15] *Sun Ship, Inc.*, 447 U.S. ast 715, 100 S.Ct. at 2432, 65 L.Ed.2d at 458; *Hetzel*, 50 F.3d at 363.
[16] 964 F.2d 471 (5th Cir. 1992).
[17] *See also, Hetzel v. Bethlehem Steel Corp.*, 50 F,3d 360, 363 (5th Cir. 1995); *MacMillan v. City of Rocky River*, 748 F.Supp. 1241 (N.D. Ohio, 1990). *See generally Kerr-McGee Corp.* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Atkinson v. Gates McDonald & Co.*, 838 F.2d 808 (5th Cir. 1988).
[18] *Grantham, supra*, at 472.
[19] *Id.*
[20] *Id.*

Grantham sued Avondale in tort under state law theories of strict liability and negligence.[21] Predictably, Avondale moved for summary judgment asserting its status as a "statutory employer" entitled to complete immunity under La. R.S. 23:1032 of the Louisiana Workers' Compensation Act.[22] The district court ruled in favor of Avondale and held that it was *Erie*-bound[23] to follow Louisiana law that provides immunity for a "statutory employer" under the state workers' compensation scheme even when the injured employee elects to pursue his benefits under LHWCA.[24] While recognizing that the United States Fifth Circuit had, in previous decisions, disallowed the "statutory employer" immunity provided under the state scheme, the district court ignored that authority and followed the latest expression of Louisiana courts on the issue. Avondale was dismissed from the case.[25]

But the Fifth Circuit reversed. In so doing, it explained the rationale of the *Erie* Doctrine and the extent to which that doctrine figured into matters fo federal law such as the LHWCA:

> The *Erie* Doctrine does not apply, however, in matters governed by the federal Constitution or by acts of Congress.[26]

The Court went on to explain that conflicts between state and federal law are perforce matters of *federal law*, quoting from *Ferri v. Ackerman*:[27]

> "[W]hen state law creates a cause of action, the state is free to define the defenses to the claim, including the defense of immunity, **unless the state rule is in conflict with federal law**"[28]

With that authority, the Fifth Circuit held that the LHWCA, which provided no statutory employer immunity, preempted the Louisiana Workers' Compensation Act, where immunity

---

[21] *Id.*
[22] *Id.*
[23] *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188(1938), holding that a federal court sitting in diversity must apply state substantive law and federal procedural law.
[24] *Grantham, supra*, at 472.
[25] *Id.*
[26] *Grantham, supra*, at 473; citing *Erie, supra.*
[27] 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed. 2d 355 (1979).
[28] *Granthm, supra*, at 473. [Emphasis in original.]

5

would have been available to Avondale.[29] The dismissal of Avondale was reversed.[30] It is not lost on Avondale that the consequences of federal preemption may not always work in its favor.

## ARGUMENT

There are several cases where federal courts have ruled in favor of limited preemption (*i.e.*, immunity of employers) when there is a conflict between the LHWCA and state tort law, and these cases are relevant in connection with Avondale's argument due to its status as a former employer seeking immunity.

For example, in *Peter v. Hess Oil Virgin Oil Corp.*,[31] the plaintiff sought to bring a state negligence claim against his borrowing employer asserting failure to provide a safe place to work. The claim was allowed under the law of the Virgin Islands, but was disallowed under the LHWCA.[32] The court found that Section 905(a) and the Supremacy Clause necessitated limited preemption of the Virgin Islands' loophole for state tort actions against borrowing employers.[33] The Court reasoned that to hold otherwise would deprive the employer of its federally guaranteed right of immunity and obstruct the congressional policies advanced by the LHWCA while limited preemption would not undermine the concept of concurrent jurisdiction set forth in *Sun Ship*.[34] The *Hess* Court also undertook a thorough review of the jurisprudence and found that the Fifth Circuit has considered the issue and concluded that Section 905(a) bars a state court recovery against a LHWCA employer.[35] The *Hess* Court also distinguished a Supreme Court

---

[29] *Id.* at 474.
[30] *Id.*
[31] 903 F.2d 935, 936 (C.A. 3[Virgin Islands], 1990).
[32] *Id.* at 952.
[33] *Id.* at 953.
[34] 50 F.3d at 366-67.
[35] *Id.* at 940, 941. *See also, Rosetti v. Avondale Shipyards, Inc.*, 821 F2d 1083 (5th Cir. 1987), *cert. denied*, 484 U.S. 1008, 108 S. Ct. 703, 98 L.Ed. 2d 654 (1988); *Lorton v. Diamond M. Drilling Co.*, 540 F.2d 212 (5th Cir. 1976).

case which appeared to hold to the contrary.[36]

In *Hetzel v. Bethlehem Steel Corp.*, a Fifth circuit case, an employee attempted to assert a deceptive trade practices claim against his employer under Texas tort law despite the employer's immunity under the LHWCA.[37] In that case, the employee argued that there was concurrent jurisdiction between the LHWCA and the Texas compensation scheme, which allowed for deceptive trade practices claims.[38] The Fifth Circuit rejected this argument, holding that limited preemption of the state act was required because the function of the LHWCA depended upon the exclusiveness of the remedy for employers.[39]

In *Cobb v. SIPCO Services & Marine, Inc.*[40], the Eastern District of Louisiana held that all Louisiana state law negligence claims filed by shipyard workers are preempted by the LHWCA. The Court found that if the plaintiff were allowed to seek damages for the employer's alleged reckless conduct in the handling and storage of hazardous substances, then the *quid pro quo* that defines the LHWCA would be disrupted.[41]

The instant matter is similar to *Hess, Hetzel* and *Cobb* in that an employer who is immune under the LHWCA is asserting that the policy and purpose of the LHWCA mandates limited federal preemption of a former employee's state law tort claims. In this case, plaintiffs are caught in a direct conflict between state tort law and the LHWCA regarding occupational disease claims against employers for exposures to asbestos prior to October 1, 1975. The LHWCA strictly immunizes the employer from such claims and preempts Louisiana state tort

---

[36] In *Hahn v. Ross Island Sand & Gravel Co.*, 358 U.S. 272, 79 S. Ct. 266, 3 L.Ed. 2d 292 (1959), the Supreme Court permitted a state tort recovery for an injury within the scope of the LHWCA. However, the state law provided that if an employer failed to secure workers' compensation coverage, then it would be submitted to a negligence action in which it would be denied common law defenses. The employer in that case had not obtained such coverage, and it was under this provision, a sanction provision, that the tort claim was allowed.
[37] 50 F. 3d 360.361 (C.A. 5 [Tx.], 1995).
[38] *Id.* at 367.
[39] *Id.*
[40] 1997 WL 159491 at *7, 1997 A.M.C. 1964 (E.D. La. 1997).
[41] *Id.* at *6.

7

law in this regard. Avondale respectfully submits that for this Court to hold otherwise would be to ignore the central purpose behind the LHWCA, which is to immunize employers from liability in exchange for no-fault compensation to employees.

Although the Louisiana Supreme Court found that the LHWCA did not pre-empt state tort law when claims against co-employees are made, its decision in *Poche v. Avondale Shipyards*[42] has been twice rejected by other state supreme courts. The Alabama Supreme Court and the Court of Appeals of Maryland -- which, incidentally, is Maryland's highest court -- reached results opposite from *Poche* in both *Fillinger v. Foster* and *Hill v. Knapp*.[43] As it turns out, Alabama law and Maryland law conflicted with the LHWCA in a similar way Louisiana law does in this case. But in Alabama and Maryland, workers covered under the LHWCA who suffer from work-related injuries can no longer bring co-employee suits because LHWCA tort immunity pre-empts Alabama and Maryland state law on that discrete point of law.[44] While unpersuaded by *Poche*, the Alabama Supreme Court in *Fillinger v. Foster* was careful to note that the *Poche* court did not have the benefit of *Sun Ship* to serve as guidance.[45]

## 1972 LANDWARD EXTENSION OF THE LHWCA

Defendants anticipate that plaintiffs will argue that federal preemption is obviated by the fact that Becnel's exposure to asbestos at Avondale occurred before 1972, the date Congress expanded the scope of the LHWCA landward. Plaintiffs will argue that because some of Becnel's work took place in areas that were not, prior to 1972, within the scope of the LHWCA, the immunities otherwise available under the LHWCA do not obtain. But all of the federal appellate courts examining this question of timing – the Second, Fifth, and Ninth Circuits – have

---

[42] 330 So.2d 1212 1976.
[43] 448 So.2d 321 (Ala. 1984); 914 A.2d 1193 (Md. Ap. 1/16/2007).
[44] In *Fillinger*, Plaintiff claimed his safety supervisor failed to provide him with a reasonably safe place to work and reasonably safe tools.
[45] *Fillinger*, *supra* at 326.

found this argument to be misleading because under federal policy set forth by Congress, the substantive law to be applied in determining LHWCA applicability is the law in effect at the time of the *manifestation* of the asbestos-related injury, not the time of exposure to asbestos.

The Fifth Circuit made its position clear in *Castorina v. Lykes Bros. Steamship Co., Inc.*[46] In *Castorina*, a longhore worker was exposed to asbestos dust on numerous occasions between 1965 and 1972 while offloading burlap bags of raw asbestos from ships owned by several shipping lines. The plaintiff's suit included a claim of seaworthiness against the ship owner, a cause of action abolished in the 1972 amendments to the LHWCA. The ship owner contested the viability of the seaworthiness claim and argued that the controlling date for determining the applicable law for all purposes is not the date of last exposure but the date that the asbestos injury is manifest.

The Fifth Circuit agreed and ruled that the date of *manifestation* of asbestosis, and not the date of exposure to asbestos, controlled the determination of whether the amendments to the LHWCA applied in cases where exposure occurred prior to 1972:

> The district court's finding that post-1972 law applies in the instant case is in accord with the rationale behind the 1972 LHWCA amendments as construed by the circuit courts. As noted by the *Black* [citation omitted] court, "[i]n cases of occupational diseases with long latency periods, the trend is clearly toward the application of the time of manifestation rule." [Citation omitted.] Further, a worker who is exposed to asbestos or similar fibers does not always contract pulmonary disease. The date of injury, therefore, is most realistically defined as the date that the disease actually manifests itself. This analysis is in keeping with Judge Learned Hand's early decision in *Grain Handling Co. v. Sweeney* [citation omitted]: "The [LHWCA] is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself."
>
> Further support for this conclusion is found in the 1984 amendments to the LHWCA. [citation omitted.] Section 28(g) of

---

[46] 758 F.2d 1025 (5th Cir. 1985), *cert. denied*, 474 U.S. 846 (1985).

9

the amendments provides:

> (g) For the purposes of this section—
> (1) in the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been made aware, of the disease..."
>
> ... [T]he legislative history of the amendments demonstrates that Congress expressly rejected the "time of last exposure approach to determining the date of injury and recognized that it is the disability itself, not mere exposure to a toxic substance, that should trigger an injured worker's rights under the Act.
>
> ***
>
> Although no such language appears in the 1972 amendments, it is clear that Congress has now adopted the "date of manifestation" approach to determining the date of injury under the Act found applicable by the district court in the instant case.[47]

The law of the Fifth Circuit expressly disallows the result sought by plaintiffs here. And it is not alone.

In *Ins. Co. of North America v. U.S. Dept. of Labor, Office of Workers' Compensation Programs*,[48] the widow of a deceased submarine builder sought benefits for lung cancer caused by asbestos exposure under the LHWCA. The exposure occurred between 1962 and 1967, but the decedent's lung cancer was not manifest until 1984. The Second Circuit ruled that under the terms of the LHWCA itself, no cause of action arises until death or disability occurs. While the decedent would have fallen outside of the coverage of the LHWCA if the time of exposure to asbestos was deemed to be the relevant date, the 1972 amendment extending the line landward applied. In reaching this conclusion, the Second Circuit cited approvingly to the Fifth Circuit's

---

[47] *Id.* at 1031.
[48] 969 F.2d 1400 (2nd Cir. 1992), *cert denied*, 507 U.S. 909 (1993).

decision in *Castorina*.[49] The court also explicitly rejected the notion that its holding constituted a retroactive application of the amendments. Instead, because the injury giving rise to the application did not occur until after the effective date of the amendment, the amendment was being applied only prospectively, not retrospectively.[50]

The Ninth Circuit reached the same conclusion in *SAIF Corp./Oregon Ship v. Johnson*,[51] holding a worker was covered under the expanded situs provisions of the 1972 amendments although he was only exposed to asbestos prior to 1972 while working on a building way which would not have fallen under a situs covered by the LHWCA prior to 1972.

## REMOVAL/REMAND JURISPRUDENCE NO GUIDE

Defendant also anticipates that plaintiffs will suggest to the Court that certain federal district courts that ordered remand can serve as guidance in this case. Specifically, *Mouton v. Flexitalic*, No. Civ. A. 99-0162 1999 WL 225438 (E.D. La. April 14, 1999) and *Gauthe v. Asbestos Corp.*, No. Civ. A. 96-2454 1997 WL 3255 (E.D. La. January 2, 1997) are cases from the Eastern District of Louisiana that ruled on the propriety of actions removed under the federal officer removal statute. One part of the three part test for valid removal under that statute is a demonstration that the removing party has a colorable federal defense. In those cases the Avondale defendants asserted that they could put forth LHWCA immunity as a federal defense.

In neither case did the court recognize LHWCA immunity. But, in *Mouton*, the court relied on the "election of remedies" doctrine that *Fillinger* and *Hill* severely criticized. Moreover, in both cases, the courts improperly looked to state law as opposed to federal law in determining the pre-emptive effect of the LHWCA. Furthermore, those rulings were

---

[49] *Id.* at 1405.
[50] *Id.* at 1406.
[51] 908 F2d 1434 (9th Cir. 1990).

jurisdictional ones not subject to appellate review because orders of remand are not appealable. Accordingly, those cases provide no precedential authority.

## CONCLUSION

The Louisiana Supreme Court declared that the United States government could not interfere with Louisiana tort law. The Court in *Poche v. Avondale Shipyards, Inc.* admonished:

> ***Until this court is confronted with authority to the contrary***, we decline to hold that the compensation law of this state is preempted from operating in an area of traditionally local concern.[52]

The contrary authority that may have been anticipated by the Louisiana Supreme Court has since appeared in *Sun Ship*. This tribunal can correct the anomaly and restore to Avondale its federally mandated immunity under the LHWCA. *Hess, Hetzel* and *Cobb* leave no alternative. These cases also require the Court to recognize the immunity of Avondale under the LHWCA because allowing a state tort action to proceed against an employer violates the essence of the LHWCA.

Respectfully Submitted:

*/s/ Edwin A. Ellinghausen, III*

---

BRIAN C. BOSSIER (#16818)
EDWIN A. ELLINGHAUSEN (#1347)
CHRISTOPHER T. GRACE, III (#26901)
BLUE WILLIAMS, L.L.P.
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002-3760
Telephone: (504) 831-4091
Facsimile: (504) 831-3055
Counsel for Northrop Grumman Shipbuilding, Inc.

---

[52] 339 So.2d 1212, 1221 (1976).

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on all counsel of record by facsimile, by e-mail, by placing copy of the same in the U. S. mail, postage pre-paid and properly addressed, this 29th day of November, 2010.

/s/ *Edwin A. Ellinghausen, III*
_____